UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA BRUNSON,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:21-cv-01082-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 16, 18)** |

I.      **Introduction**

Plaintiff Laura Brunson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 16, 18, 19.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

II.     **Factual and Procedural Background[2]**

On November 29, 2018 Plaintiff applied for disability insurance benefits alleging a disability onset date of October 30, 2017.  The Commissioner denied the application initially on June 4, 2019 and on reconsideration on July 2, 2019.  A hearing was held before an Administrative Law Judge (the "ALJ") on September 28, 2020.  AR 130–159.  On October 27, 2020 the ALJ issued a decision denying Plaintiff's application.  AR 16–29.  The Appeals Council denied review on June 11, 2021.  AR 1–7.  On July 12, 2021 Plaintiff filed a complaint in this Court.  Doc. 1.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 8 and 10.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of October 30, 2017.  AR 18.  At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; degenerative disc disease and spondylosis of the lumbar spine; fibromyalgia; chronic fatigue syndrome; post-herpatic polyneuropathy; vertigo (benign paroxysmal positional vertigo, or chronic vertigo); obstructive sleep apnea; and, obesity.  AR 18.  The ALJ also determined at step two that Plaintiff had the following non-severe impairments: breast mass; nicotine abuse; bronchitis; recurrent herpes zoster; upper respiratory infection; skin lesion; tinea versicolor; nicotine dependence; B-cell non-Hodgkin's lymphoma of stomach; rash; gastroesophageal reflux disease ("GERD"); colon polyps; pulmonary nodules, benign nevi; rosacea; intertrigo to the folds; flu-like illness; anxiety disorder; other amnesia; dermatitis; herpes simplex virus; costochondritis; urticarial; menopause; Ekbom syndrome; parasitophobia; scabies; insomnia; gastroenteritis; serrated adenoma; gingivitis; multiple sclerosis[3]; allergic rhinitis, sciatica; pinguecula of the

---

[3] It's not clear where this extensive list of non-severe impairments came from, whether from Plaintiff's alleged diagnoses identified at the time of her application, from the medical record, or some combination of the two. It's also not clear why the ALJ identified some of these conditions as non-severe impairments rather than omitting them entirely. As to multiple sclerosis, for example, the ALJ noted later in the decision that, despite Plaintiff's contention she had multiple sclerosis, that condition was specifically ruled out by her providers based on brain MRI.  AR 23.

bilateral eyes; astigmatism of the bilateral eyes; cataract of the bilateral eyes; and, presbyopia.  AR 18.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 21.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a reduced range of sedentary work as defined in 20 C.F.R. 404.1567(a) with the following limitations: requires cane use for ambulation; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, or crawl; can tolerate no exposure to hazards, including unprotected heights; and, can never operate heavy machinery.  AR 21–26.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as an office manager; composite position of office manager and human resource assistant; accounting tech; and the composite position of bookkeeper and secretary.  AR 27–28.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of October 30, 2017.  AR 28.

## V.    Issues Presented

Plaintiff's central argument is stated as follows: "The issue lies that the residual functional capacity provided simply does not fully encapsulate the extent to which Ms. Brunson is disabled." Br. at 4, Doc. 16.

### A.    Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

## 2.   **Analysis**

Plaintiff's argument consists of 10 short paragraphs which collectively span about 2 to 3 pages in total length.  These paragraphs will be quoted and analyzed in turn rather than attempting to paraphrase the same.[4]

Paragraph 1 of Plaintiff's argument states as follows:

In this case, the primary complaint is Trigeminal Neuralgia Pain. The pain is a cramping, burning sensation with painful tingling that feels like lightning bolt sensations randomly on her right side, forehead, tops of and behind her eyes, cheek, lips and towards her chin. Her gums are also numb and painful feeling like she is

---

[4] Defendant contends at the outset that Plaintiff's brief is deficient in several respects, including non-compliance with the scheduling order's directive that Plaintiff provide: 1) a short, separate statement of each of the plaintiff's legal claims 2) an argument separately addressing each claimed error supported by citation to legal authority and application thereof, and 3) citations to support all assertions of fact.  Doc. 15 at 3. Indeed, Plaintiff does not separately break out the legal claims, and the argument is essentially devoid of legal citations, factual citations, and application of law to fact.  As Defendant also notes, Plaintiff's argument is largely copied and pasted from the letter brief she submitted to the appeal's council (though there's nothing inherently wrong with that approach).  AR 256-59.  Defendant contends these deficiencies alone warrant affirmance.  In reply, the only explanation Plaintiff offers is that, "Plaintiff's counsel likes to keep things brief and simple."  Reply at 1, Doc. 19.  In any event, it would be a harsh sanction to issue judgment against Plaintiff on that basis alone.  The Court will therefore address the arguments as presented.

recovering from a root canal surgery each day. Ms. Brunson spends a majority of her day in bed or in a recliner due to the pain. She remains awake only a couple of hours a day. No limitations were addressed for these issues.

Br. at 5, Doc. 16.

Plaintiff appears to be summarizing her testimony concerning her neuralgia pain and it's limiting effects, which she contends the ALJ did not adequately address or incorporate into the RFC.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.  An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.

The ALJ offered a thorough summary of Plaintiff's testimony concerning her trigeminal neuralgia pain.  AR 22.  The ALJ found the impairment non-severe, noting that "there is little documented evidence of this impairment, other than the claimant's subjective allegations at the hearing."  AR 19.  Plaintiff does not acknowledge or dispute this assertion, nor does she cite any objective evidence of the impairment or its limiting effects.  Even Plaintiff's description of the testimony quoted above does not speak directly to limiting effects (such as exertional capacity, lifting, sitting, standing, walking ability), but merely describes the nature and location of the pain and the fact that she does spend the majority of the day in bed to cope with the pain.

6

The ALJ, by contrast, offered a more thorough summary of the testimony regarding pain severity than Plaintiff offers in her brief, including the allegations that the pain was 10/10 notwithstanding medication use, and was sufficiently severe that it undermined her focus and caused her to physically stagger. AR 22. The ALJ noted however, the absence of any evidence of Plaintiff presenting to providers in acute distress or distracted by severe pain. AR 19. Plaintiff cites no counterexamples. Although subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

Despite minimal objective evidence of *trigeminal* neuralgia or associated limitations, the ALJ did note, "records indicate that her right-sided facial and scalp pain was secondary to *postherpetic* neuralgia." AR 19 (citing Ex. 10F, 84) (emphasis added). The ALJ cited records concerning the same, including: 1) in November 2018 Plaintiff reported her persistent neuropathy with feeling of swollen lip had diminished over time during the 4 year period since its onset (Ex. 5F at 4); 2) March 2019 continued reports of neuropathic pain on the right side of her face and scalp (Ex. 10F at 84); 4) the same reports in May 2019; (*Id.* at 47); and, 5) she described the pain as a constant dull burning pain level 5/10 (*Id.* at 68).

Ultimately the ALJ did find postherpetic neuralgia to be a severe impairment. Further, despite the opinions of the agency's reviewers at the initial and reconsideration levels that Plaintiff could perform medium work, the ALJ found Plaintiff was limited to a reduced range of sedentary work with various limitations. The ALJ included those limitations at least partially in consideration of "her reports of pain throughout the record." AR 25.

In sum, Plaintiff's assertion that "no limitations were addressed for these issues" (i.e. her

7

neuralgia pain) is not accurate.  The ALJ's discussion of the matter was much more thorough than Plaintiff's, including: 1) identifying the diagnosis that, according to the record, was causing the neuropathic face and scalp pain (namely postherpetic neuralgia, not trigeminal neuralgia), 2) thoroughly canvassing the objective and subjective evidence of the same with accompanying pin citations, and 3) ultimately limiting plaintiff to a reduced range of sedentary work partially in consideration of her continued reported pain throughout the record.  The ALJ did not accept Plaintiff's testimony that the neuropathic pain in her face and scalp was a level 10/10 undermining her ability to focus, causing her to physically stagger, and required bed rest 95% of the day.  On this point, the ALJ's conclusion was supported by the records the ALJ cited.

Paragraphs 2, 3, and 4 of Plaintiff's argument state as follows:

A Medical Source Statement was completed by Mary Collingnon on 8-28-20 (30F) clearly stating that Brunson is unable to work. But in greater detail, identifies the use of a cane for ambulation *and balance*, only occasional use of her left upper extremity and essentially none on the right, with significant sitting, standing walking and lifting restrictions. She also concurs with the lying down requirement of the claimant.
A functional capacity report was prepared on 8-21-20. This report provides great insight to her subjective and objective limitations. It also discusses the inability to complete much of the testing due to biomechanical issues, use of a cane and psychological issues. The net result is that she cannot do much, and what she can do is significantly limited in duration. Further, the physical therapy records of Glinn and Giorda discuss her falling on occasion.
Yet no limitations were addressed for the issues of using a cane for ambulation which would further impede the 2 hours of standing/walking per day not to mention the requirement to allow for lying down throughout the day.

Br. at 5, Doc. 16.

Here, Plaintiff largely recites facts without accompanying argumentation or analysis.  All agree that NP-C Collingnon did submit a medical source statement opining Plaintiff had work preclusive physical limitations in every respect.[5]  Ex. 30F, AR 2528-2535.  The ALJ rejected that

---

[5] For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. §

opinion for several reasons, including: 1) NP-C Collingnon completed the check-box RFC questionnaire after their second visit which Plaintiff sought out because Kaiser would not complete her paperwork; 2) the opinion was supported mostly with reference to Plaintiff's subjective complaints of severe pain rather than objective findings; and, 3) the opinion was inconsistent with the longitudinal record demonstrating only mild objective findings and conservative care.  AR 26.

As to the longitudinal record, the ALJ provided a thorough discussion of the same with accompanying pin citations including, for example: 1) imaging showing only mild spinal abnormalities; 2) in June through September of 2018 Plaintiff's physical exams were unremarkable, she reported exercising and meeting with a dietician and personal trainer; 3) November 2018 reports that her neuralgia improved over time since it began 4 years earlier; 4) in May 2019 she had 5/5 strength in all extremities on exam and her pain was described as constant burning, dull pain level 5/10; and, 5) in September 2019 she reported she was mostly bed ridden and unable to complete ADLs, but a physical therapy mobility examination the same month noted she had no functional deficits requiring physical therapy expertise, but demonstrated only deconditioning that would be addressed by a general exercise program.  AR 23-24.

Plaintiff does not acknowledge or dispute this discussion, nor does she attempt to cite any records that would support NP-C Collingnon's opinion on any subject.  Although the ALJ's discussion was not overwhelming persuasive, it was not facially deficient and it was well grounded in the required regulatory factors of supportability and consistency.[6]  Further, a review of the records the ALJ cited confirms they support the factual propositions for which they were cited.

---

404.1520c(a).  Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors.  20 C.F.R. § 404.1520c(c).  Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered.  Id.

[6] The ALJ also seemed to draw unnecessary attention to facts with no bearing on the ultimate issue of disability, such as her attempt to self-prescribe hydroxychloroquine, her requests that providers correct errors in progress notes that she believed inaccurately capture their discussion, and other idiosyncrasies.

9

1

2

3

This is the extent of the inquiry the Court will undertake on Plaintiff's behalf absent any pertinent discussion by Plaintiff.

4

5

6

7

8

9

10

11

12

Moreover, the gravaman of Plaintiff's argument here is factually inaccurate. Plaintiff contends "no limitations were addressed for the issues of using a cane for ambulation which would further impede the 2 hours of standing/walking per day . . ." It is not clear why Plaintiff has this impression. The ALJ did include the cane use requirement in the RFC. AR 21. The ALJ also posed that limitation to the VE in the form of a hypothetical and the VE testified that cane use would not undermine her ability to perform her past relevant work as an office manager and human resource assistant, accounting tech, or the composite position of bookkeeper and secretary as actually performed or as generally performed. AR 154.

13

14

15

16

17

18

19

20

21

22

Plaintiff also references a functional capacity report dated August 21, 2020 with no citation to the same. The report Plaintiff appears to be referencing is exhibit 28F which is 33 pages in length and was also prepared by NP-C Collingnon based on her examination of Plaintiff. Plaintiff states that it provides "great insight" into her subjective and objective limitations, but the only examples referenced are her inability to complete some of the functional tests, nonspecific "psychological issues," and use of a cane (which the ALJ already provided for in the RFC, as mentioned above). Plaintiff identifies no findings from the examination that support NP-C Collingnon's opinion, nor would there be any reason to accept the findings from this one-time examination at the expense of the longitudinal record.

23

24

25

26

27

28

Finally, Plaintiff references physical therapy records from Glinn and Giorda noting that she fell on occasion. Though she offers no citation to the same, the exhibit in question is 27F and does reference Plaintiff has had "a couple of falls," though the statement appears to be based on Plaintiff's self-reported history of her present illness rather than an objective observation that she fell during treatment. AR 2486. Moreover, it's not clear what limitations Plaintiff believes

logically flow from the fact that she fell on two occasions, other than the need for a cane which the ALJ did include in the RFC.

Paragraph 5 of Plaintiff's argument states as follows:

Additionally, she suffers from Anxiety Disorder and PTSD which is mentioned throughout the Kaiser medical records. She endured a sexual assault in the late 1980's by her then fiancée. Her daughter was then killed in a tragic car accident in 2015. This depression also limits her functionality. No limitations were addressed for these mental impairments and limitations.

Br. at 5-6 (emphasis added)

At step two the ALJ did acknowledge the mental impairments of anxiety disorder and PTSD as well as mild cognitive impairment, other amnesia, and depression.  AR 19.  The ALJ then summarized the records concerning Plaintiff's mental health including the largely benign objective findings on mental status examination.  AR 19.  The ALJ then performed the analysis for evaluation of mental impairments as set forth at 20 C.F.R. § 404.1520a, and considered the four broad categories of mental functioning.  AR 20.  The ALJ found Plaintiff had no more than mild limitations in each area, and that her mental impairments were therefore non-severe.

In so concluding, the ALJ underscored: 1) examinations noting intact memory, despite subjective complaints of memory loss (Ex. 6F, 7; 17F, 213); 2) evidence of social isolation, "but general lack of abnormal [sic] abnormalities and her cooperative behavior (Ex. 17F at 212–213); 3) normal concentration on examination despite some reports of social anxiety which could limit Plaintiff mildly in the area of concentration (Ex. 16F, 442; 17F, 213; 23F, 397); and, 4) Plaintiff's reports that she handle stress and crisis well though she did report significant anxiety after the passing of a loved one (Ex. (10F, 1; 16F, 442; 23F, 397).

Although the ALJ's reasoning for finding only mild mental limitations was not particularly thorough or compelling ("general lack of abnormal abnormalities"), it was not facially unreasonable.  Moreover, a review of the ALJ's pin citations confirms that those records do

illustrate the factual propositions for which they were cited.  However, Plaintiff did not attempt to identify any counterexamples in the record of abnormal mental status examination findings (which are almost assuredly present to some extent in a 2,500 page administrative record).  Plaintiff's assertion that "no limitations were addressed for these mental impairments and limitations" is factually incorrect.  The ALJ considered her mental impairments.

Paragraph 6 of Plaintiff's argument reads as follows:

Despite this record, the Court found the reporting of Ms. Collingnon unpersuasive as well as the prior State Agency findings. It is unclear which medical evidence the Court does find persuasive in rendering its decision.

Br. at 6.

Plaintiff similarly argued in her reply that the ALJ did not buttress her RFC conclusions with reference to any medical opinion, but rather rejected the opinions of the state agency reviewers and rejected the opinion of NP-C Collingnon.  Having decided those opinions were unpersuasive, Plaintiff contends the ALJ had a duty to further develop the record with consultative examination and associated opinion rather than constructing an RFC herself. Reply at 1-2, Doc. 19.

This argument, although a common one, is predicated on a misunderstanding of the applicable law.  The ALJ's task in formulating the RFC is not simply to choose between conflicting opinions in the record.  Nor must the ALJ obtain a consultative opinion if he/she does not agree with the existing opinions in the record.  The RFC need not mirror any particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3).

The state agency reviewing Drs. Tayloe and Khong opined that Plaintiff was capable of medium work, which the ALJ found unpersuasive given evidence of cervical and lumbar spine abnormalities (albeit mild ones), persistent reports of substantial neuralgia pain, and high BMI.  AR 25.  The ALJ also was unpersuaded by NP-C Collingnon's opinion that Plaintiff was capable of less than sedentary exertional work with work preclusive limitations in nearly every respect (such

as the inability to lift even 1 pound), despite no comparable examination or diagnostic findings in the longitudinal record.  AR 26.

The opinions of the agency doctors on the one hand, and NP-C Collingnon on the other, were at opposite ends of the spectrum.  However, this does not suggest the record was ambiguous or that a consultative examination was necessary.  It suggests the opinions were extreme and a more reasonable conclusion would lie somewhere between the two.  Thus the ALJ did not commit an error by constructing the RFC herself rather than ordering a consultative examination.  It is also worth noting that the RFC the ALJ constructed (reduced range of sedentary work with postural restrictions and cane use) was much closer to NP-C Collingnon's opinion than the opinion of the state agency physicians (medium work).  Paragraph 6 of Plaintiff's argument identifies no error.

Paragraph 7 of Plaintiff's complaint reads as follows:

> Subsequently, claimant has continued to treat and has continued to update file with records that are further consistent with her complaints. These include a 12-3-20 report from the Comprehensive Blood and Cancer Center noting chronic incontinence, chronic joint pain in her upper back and right shoulder as well as continued focal pain due to her trigeminal neuralgia with decreased balance, memory and fear of falling. The updates also include more recent reporting of Ms. Collingnon noting a history of fibromyalgia now causing increasing pain in the right arm making its use difficult. She has difficulty with showering and other activities of daily living (10-29-20 report). On 12-8-20 she further notes that claimant does not maintain the stamina to work and is suffering chronic fatigue.

Br. at 6.

Plaintiff offers three examples of subsequent developments warranting consideration, dated December 3, 2020, December 8, 2020, and October 29, 2020.  These records post-date the ALJ's decision here which was issued October 27, 2020.  The ALJ's decision only applies to the period between the alleged disability onset date of October 30, 2017 and the date of the ALJ's decision on October 27, 2020.  *See* AR 28 ("The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2017, through the date of this decision." (citing 20 CFR 404.1520(f)).

13

The appropriate context for consideration of the additional evidence would be new application for disability benefits.  The Appeals Council told Plaintiff the same thing when they declined her request to have that same evidence exhibited and added to the administrative record.  AR 2. ("The Administrative Law Judge decided your case through October 27, 2020. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 27, 2020.  If you want us to consider whether you were disabled after October 27, 2020, you need to apply again.").

Paragraph 8 of Plaintiff's argument reads as follows:

> The Decision in this case seems to gloss over the medical records supporting the existence of trigeminal neuralgia, and therefore finds it not a severe impairment when claimant testified that this is the more limiting of her issues because it is not mentioned much in the medical records. Yet this is mentioned in the records of Dr. Alexan however referred to as post-herpetic neuralgia. Regardless of the proper terminology or diagnosis, the condition is verified and the interference with her ability to maintain memory focus and balance is a significant impairment that, in combination with the sedentary residual capacity prevents any SGA employment. (see Hypos 3, 4, 5, 6 and 7). Further, Listings 11.14 and 13.05 should have been more fully considered. Again, no limitations were addressed for the issues outside of those included by the existing orthopedic disabilities.

As Plaintiff acknowledges, the relevant records referred to the condition as post-herpetic neuralgia.  The ALJ did not gloss over those records, but discussed the same as mentioned above, including the following observations: 1) in November 2018 Plaintiff reported her persistent neuropathy with feeling of swollen lip had diminished over time during the 4 year period since its onset (Ex. 5F at 4); 2) the neuropathy was secondary to herpes simplex (10F at 79); 3) March 2019 continued reports of neuropathic pain on the right side of her face and scalp (Ex. 10F at 84); 4) the same reports in May 2019; (*Id.* at 47); and,  5) she described the pain as a constant dull burning pain level 5/10 (*Id.* at 68).  The ALJ ultimately found that these records did not support Plaintiff's testimony that her pain was a 10/10 undermining her concentration and memory and requiring bed rest 95% of the day.  AR 22.  That finding was supported.

Plaintiff references additional records from Dr. Alexan discussing the same condition, again with no citations to the same.  The transcript index has two references to Dr. Alexan at exhibit Exhibit 6F and 13F.  Exhibit 6F contains 3 pages from a December 21, 2018 visit with Dr. Alexan.[7]  Neither did the ALJ gloss over this record, she simply discussed it in a different section addressing Plaintiff's alleged memory problems. AR 19.  Plaintiff is correct that this record does reflect a diagnosis of postherpetic neuralgia.  AR  546.  However, it does not substantiate Plaintiff's contention that post-herpetic neuralgia, or any other condition, interferes with her memory, focus, and balance.  As the ALJ emphasized, under assessment Dr. Alexan noted, "subjective memory loss- doubt neurodegenerative disease, she remains functional." AR 546.  Under mental status Dr. Alexan noted, "The patient is able to concentrate normally . . . memory is intact." *Id.*  As to balance, Dr. Alexan noted, "denies cold extremities or difficulty in walking," and her gait was noted as "narrow based with no ataxia noted." *Id.*

Finally, Plaintiff asserts without elaboration that "Listings 11.14 and 13.05 should have been more fully considered."  But Plaintiff neither discusses the requirements of either listing nor attempts to apply them.  This assertion however does not address Plaintiff's burden to identify harmful error in the ALJ's decision.  *See Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

Paragraph 10 of Plaintiff's argument reads as follows:

On 7-30-20 this office specifically requested a CE so that the Court could better understand the physical limitations but that was not afforded to the claimant. Hence why the Functional Capacity Report was obtained. In this case, the Court[8] explicitly

---

[7] Exhibit 13F contains no novel information. It is a Summary of Care at Dr. Alexan's office which lists the only encounter as the December 21, 2018 encounter depicted in Exhibit 6F and summarizes the results of that encounter.
[8] Plaintiff is referring to the ALJ here as "the Court."  Which made sense in the context of her letter to the Appeals Council because, at that stage of the proceedings, the ALJ was "the Court."  Plaintiff then copied and pasted the

1

2

states that he does not find the State Agency doctors persuasive and gives that
rationale, but then says that they are.

3

Br. at 7.

4

5

6

7

8

9

10

The argument regarding the denied request for a consultative examination was addressed in

part above.  Plaintiff's reply brief contains the only factual assertion in support of that argument:

"Plaintiff's request for a consultative examination was premised on the fact that while there was an

abundance of treatment notes, there was very little opinion evidence."  Reply at 2, Doc. 19.  Plaintiff

therefore concludes that the ALJ had a duty to further develop the record with a consultative

examination.  As set forth below, this argument also fails.

11

12

13

14

15

16

17

18

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous

or inadequate to allow for proper evaluation.  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir.

2001); *Tonapetyan*, 242 F.3d at 1150.  A specific finding of ambiguity or inadequacy in the record

is not required to trigger the necessity to further develop the record where the record itself

establishes the ambiguity or inadequacy.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011);

*Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal.

Apr. 17, 2020).

19

20

21

22

23

24

25

26

Plaintiff neither discusses the legal standard nor attempts to apply it.  The quantity of

opinions in the record does not speak to the presence or absence of evidentiary ambiguity or

inadequacy.  There is simply nothing anomalous about the number of opinions here.  The agency's

disability determination service (DDS) physicians Tayloe and Khong issue opinions at the initial

and reconsideration levels, as they usually do.  Plaintiff's treating provider NP-C Collingnon also

submitted an opinion, as is often the case.  In this case the agency did not order a consultative

examination.  The regulations provide that the agency may obtain a consultative examination to

27

28

content of her letter to the Appeals Council in her motion for summary judgment here.

16

resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case.  *See* 20 C.F.R. § 404.1519; *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished). Plaintiff advances no argument as to why the record was ambiguous or inadequate so as to require a consultative examination.

Plaintiff then quotes the ALJ's discussion of the opinion evidence and notes an inconsistency in that discussion.  The ALJ opened by stating, "the prior administrative findings of Dr. D. Tayloe, M.D., and Dr. A. Khong, M.D. are *not* persuasive." AR 25 (emphasis added)  The ALJ then proceeded to critique those prior administrative findings as inconsistent with the medical evidence and Plaintiff's consistent reports of pain. *Id.*  The ALJ concludes the paragraph by stating, "In sum, the prior administrative findings of Dr. Tayloe and Dr. Khong *are* persuasive."  *Id.* (emphasis added).  This is clearly a typographical error, as the apparent intent was to state that the prior administrative findings were *not* persuasive, as the ALJ stated at the beginning of the paragraph, consistent with the ALJ's rejection of the medium RFC proposed by the two agency doctors in favor of a reduced range of sedentary work.  The ALJ's typo was not a harmful error because "it is clear from the record that the ALJ's error was inconsequential to the ultimate non disability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

In conclusion, Plaintiff identifies no harmful error in the ALJ's decision.

**VI.     <u>Conclusion and Order</u>**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Laura Brunson.

IT IS SO ORDERED.

Dated:   **December 5, 2022**                         **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE